Today's final argument, Carter v. Chicago State University. Mr. Cohen. May it please the Court and counsel for the defendants, I represent Tolley Carter, an accounting professor at Chicago State University who has been tenured since 1992. We are asking the Court in this case to partially reverse the District Court's summary judgment ruling in favor of defendants of Chicago State University and defendants Semyar. In April or May of 2008, a new chair of the Department of Accounting and Finance was appointed. There was a faculty election and the vote was four to four, four for Mr. Carter and four for another professor, Mr. Coupe. And after that election, which resulted in the tie, Mr. Coupe withdrew and so that Mr. Carter could in his mind take the position and Mr. Professor Semyar, who was the dean of the College of Business, talked Mr. Coupe into taking the position and said that he wouldn't appoint Professor Carter to that position and would go outside the school to look for someone. And Professor Coupe accepted the position. He was appointed to that position. And there were two things going on at that time. One was that there was a lawsuit pending against Chicago State and Professor Semyar that was filed by Professor Carter alleging, among other things, violation of Title VII in Section 1981. And also at that time, Professor Carter had returned from FMLA leave and he was protesting the assignment that he was given when he returned. He was protesting and saying that that was a violation of the FMLA and that it was discrimination and retaliation. Now, after that appointment was made, Professor Coupe, after maybe a couple months, quit the position. He didn't want the position anymore. And Dean Semyar basically assumed the duties himself, the chair of the Accounting and Finance Department. He assumed those duties himself. But then, in November of 2008, he appointed another professor, Professor Hunt, to that position. The district court found that there was a question of fact as to whether Professor Carter was retaliated against when he wasn't chosen for the chair position in April and May of 2008. And, I'm sorry, there was a question of fact as to whether he was retaliated under the FMLA in Section 1981 when he wasn't chosen at that time. But the district court then granted summary judgment against Professor Carter with respect to the appointment in November of 2008. So, the jury decided there was no retaliatory intent in the April-May 2008 decision, correct? That is correct. Is there any evidence of any further retaliatory purpose by Professor Semyar after that time? Well, we believe there is. We take the fact that he let me just say one thing before I get to that. One of the reasons, at least, and we say the most significant reason, that Professor Dean Semyar said that he chose Professor Coupe in April of 2008 or May of 2008 over Professor Carter was that Professor Coupe had a Ph.D. and Professor Carter did not. And in the November 2008 decision, that wasn't a factor. So, in November 2008, Professor Hunt did not have a Ph.D. The jury heard evidence about the November 2008 decision, correct? That's correct. That was part of your overall evidence to help show retaliatory intent in April or May of 2008. That's correct. I guess the point I'm trying to make is that it's entirely possible that the reason the jury ruled for Chicago State and Professor Semyar at that time was they felt that the fact that Professor Carter didn't have a Ph.D. and Professor Hunt did have a Ph.D. was a sufficient reason, non-discriminatory reason, to justify the picking of Professor Coupe at that time. Whereas in the November 2008 decision, there wasn't that articulation that could be made and also... But the question really isn't whether there was a particularly good reason, but whether Semyar was acting with retaliatory intent. And a jury that heard all this evidence said no. That's correct. Why would Semyar have been retaliating in November but not in April? Well, obviously we think he was retaliating at both times. That's been resolved. He was retaliating in November because at that time, Professor Carter was in the air. There had been a vote. There had been a 4-4 tie. And it would have been most reasonable to appoint Professor Carter to the position at that time. And he didn't appoint him at that time. In fact, the reason he gave for appointing Professor Hunt rather than Professor Carter was I just had to appoint someone. And we believe that that reason itself is evidence of cover-up of animus in this case. Because it's not a believable reason. The fact that Hunt had a J.D. degree as opposed to a Ph.D. didn't make any difference. Did that come into conversation at all? Well, in our view, we cited evidence that showed that because of the degrees that Professor Hunt had, he was actually less qualified than Professor Carter according to the testimony. I gather though that Professor Carter had a track record as chair, correct? He had been chair quite some time before that. I believe that the evidence shows that Dean Semyar did not know that he had been chair that previous time. Professor Semyar, Dean Semyar did not base his decision in any way on the fact that Professor Carter had been chair before. Did Dean Semyar know that the plaintiff, for example, called in sick every week to one class in 2007? Well, obviously that was subject to the prior lawsuit. So he did know that. And there was an issue as to whether he should be sanctioned for that. Is it also correct that he knew that the plaintiff had refused to attend a conference to address student complaints about lack of attention in essence? That's something that the defense told us about in their brief. I don't know if he knew that. All I know is that those aren't reasons that he gave for the decision that he made in the case. He was asked what was the reason for why he appointed Professor Hunt instead of Professor Carter, and he didn't give those reasons. He said, you know, why didn't you appoint Mr. Carter acting chair during the period that you were dean at any time? He said, no reason. I had to appoint one person. I appointed Atha Hunt. And, you know, he certainly would have had the opportunity to say, why didn't you appoint Professor Carter for a number of reasons dealing with Professor Carter's competency at the position, but he didn't say that. I think that in dealing with this motion for summary judgment, you have to deal with the reason in and of itself is not believable. To the extent it's even a reason, it's really he's just saying a tautology and he's not really explaining why he appointed one person versus the other. Mr. Cohen, if this acting chair issue is so important, why was there not really a hint of it in the complaint or the EEOC charge? Well, the subject, the chair position was not part of the EEOC charges. It's a section 1981 in FMLA complaint where there wasn't a charge filed with respect to it. With respect to the complaint, I mean, the complaint is, I agree that the complaint is general and it just says, failing to So it doesn't really particularly say whether it was May or April of 2008. Is there a difference in compensation for acting chairs versus full chairs? We believe that the testimony shows that there's not a difference in compensation. Dr. Jefferson was asked about that. And she testified that if the chair is appointed for more than a year, then the compensation would be the same if they were acting chair for the full fiscal year. I think it's important. She also testified that Professor Hunt served for more than a year and a half in the position. So I don't think the compensation would have been different. The reason that the the court said that Professor Carter hadn't provided evidence that he was interested in the position. And from our perspective I go back to two points. One is that that is not a reason that the employer gave for why Mr. Carter wasn't appointed. They didn't claim that So we didn't appoint him because he didn't express interest in the position. And my second argument would be you have to look at the context of all the facts. Ms. Welch. Good morning, your honors. May it please the good afternoon almost. Good afternoon. I'm Mary Welch. I'm here on behalf of CSU and Dean Simiar. In fact the first question here is could plaintiff really amend his complaint in response to our summary judgment motion. I mean the court has indicated the complaint doesn't inform us, didn't notify us that the acting chair position was at issue. And nor did anything happen during discovery to tell us that either. Because for example when we asked plaintiff what are your damages he said well I would have gotten three years of three extra months of salary. This is the difference between being a faculty person and being the elected chair if you will. So he was focused even during discovery about just the elected chair position not the acting chair position. So we had no idea until he responded to our summary judgment motion and said well wait I've got this other claim here. So we said well the first thing you don't have on that claim which is part of your prima facie case is you have to show that you applied for a job that you say you didn't get. And either in a case like this where it's about a promotion where there's not a formal application process where you're sort of plucked from the group. You still have to have indicated to the chooser that you're interested in the job. Now plaintiff says well I was interested in the elected chair job. I was nominated. I was ready to go. But if that's true then why when Courbet resigned which was certainly public knowledge he didn't say Dean Simiar yo I'm still here. If he was interested in the job he would have said something to Dean Simiar as soon as the opening occurred as soon as Dr. Coupe resigned which was in November. So months went by when plaintiff did not indicate to anyone that he was interested in the opening that Dr. Coupe had left. And also as plaintiff indicated the two jobs are not the same because you have to be there for the full fiscal year in order to get the additional benefits which is you're paid the extra three months for the summer and you also get paid vacation which regular faculty and acting chairs don't do if the acting chair is for less than the fiscal year. Well certainly this position was not for the full fiscal year because it started in November and the fiscal year starts on the first of July. So the first problem with plaintiff's argument here is that it wasn't even properly before the district court. He could have made it clear during discovery there's very little discussion in any of the depositions about the acting chair position. There's maybe a page or two which is in great contrast to the elected chair position in all the depositions. And plaintiff could have asked for a serve rebuttal as the district court noted and he didn't. In fact he didn't provide any evidence until his motion to reconsider on summary judgment and then it was too little too late because all he said was well if I had known about the opening I would have applied. Well he knew about the opening. He knew that Dr. Coupe had resigned. It just doesn't make any sense. But even if this claim were properly before the district court the district court correctly found that there was insufficient evidence not just a lack of evidence of expressing an interest or making some sort of application or a substitute for an application here. But in addition there just isn't what's come to be known as the convincing mosaic of evidence. And some of the main things are that the court pointed out earlier there is less suspicious timing here. The timing is more unsuspicious than it was in May. In May plaintiff had just come back from his FMLA leave which ended in March and he didn't get, he wasn't, Dean Simiard did not chair a position. But there were other reasons too and plaintiff says that the only reason that Dean Simiard gave at his death was no reason. Well that's not true because in his death this is document 102-6 at page 11 which is page 40 of the death he says Hunt, well he was acting. For acting there's no requirement of a PhD. But he also, he Hunt, he told me he was a PhD. So that was another reason that in the record that Dean Simiard gave. But there were countless other reasons. The same reasons that he would not have, that he was not recommended for the position in May. And these include, well these include his the petitions by the students, his conflicts with the other faculty. I mean plaintiff had a history of problems with students or students having problems with him and other faculty having problems with him. And in addition Dean Simiard didn't know, as plaintiff correctly stated, Dean Simiard didn't know that plaintiff had been a dean, had been removed, I'm sorry, as chair in the 90s because of this conflicting conflicts and faculty not speaking to each other and so on. And in fact one of the reasons that Dean Simiard said he had not recommended plaintiff for an earlier acting chair position was that he thought there was a litany of reasons here in the evidence why Dean Simiard the non-retaliatory reasons that Dean Simiard had for not appointing plaintiff to the acting chair position. So here just, unless the court has questions, there's no smoking gun here, there's no convincing mosaic here, there's no connection whatsoever between plaintiff's FMLA leave or his prior suit and not recommending him for the position of acting chair. In fact there are a multitude of other reasons that he was not recommended. And for this reason, unless the court has questions, we ask the committee to adjourn for this recess.